JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ANDREW CORREA,**<br>*an individual and on behalf of all*<br>*others similarly situated*<br>         **Plaintiff,**<br><br>     **v.**<br><br>**EVOQUA WATER**<br>**TECHNOLOGIES, LLC et al.,**<br>         **Defendants.** | **NO. 2:25-cv-03956-KS**<br><br>**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [DKT. NO. 19] AND DENYING AS MOOT DEFENDANT'S MOTION TO DISMISS [DKT. NO. 25]** |

## INTRODUCTION

Before the Court is Plaintiff's Motion to Remand filed on August 28, 2025 ("Motion," Dkt. No. 19) and Defendant's Motion to Dismiss the First, Second, Third, Fourth, Fifth, Sixth and Eighth Causes of Action of Plaintiff's Second Amended Complaint filed on September 30, 2025 ("Motion to Dismiss," Dkt. No. 25). Pursuant to Federal Rule of Civil Procedure 78 and Local Rule 7-15, the Court found these motions were appropriate for decision without oral argument and took the motions under submission for decision without oral argument. (Dkt. No. 29.)

1

For the following reasons, the Plaintiff's Motion to Remand is **GRANTED**, and this matter is remanded to the Superior Court of California, County of Los Angeles  Accordingly Defendant's Motion to Dismiss is **DENIED AS MOOT**.

**BACKGROUND**

On April 2, 2025, Andrew Correa ("Plaintiff"), an individual and on behalf of all others similarly situated, commenced an action against Evoqua Water Technologies, LLC ("Defendant" or "Evoqua") by filing a complaint in the Superior Court of California, County of Los Angeles ("Los Angeles Superior Court").  ("Complaint," Dkt. No. 1-1).  Plaintiff served the Complaint on Defendant on April 4, 2025.  (*See* Dkt. No. 1-2.)  Defendant timely filed and served an Answer to the Complaint on May 1, 2025.  (*See* Dkt. No. 1-3.)

In the Complaint, Plaintiff alleged that Defendant violated several provisions of the California Labor Code.  Specifically, Plaintiff alleged that Defendant: (1) failed to pay to its employees for all hours they worked in violation of California Labor Code § 1194.; (2) failed to pay overtime in violation of California Labor Code §§ 510 and 1198; (3) required its employees to work through mandated meal periods in violation of California Labor Code §§ 226.7 and 512; (4) required employees to work through mandated rest periods in violation of California Labor Code §§ 226.7 and 512; (5) failed to pay and indemnify its employees for necessary expenditures and losses incurred in direct consequence of the discharge of their duties in violation of California Labor Code § 2802 and the Industrial Welfare Commission ("IWC") Wage Orders; (6) failed to pay wages of discharged employees in violation of California Labor Code §§ 201 and 202; and (7) failed to provide its employees with complete and accurate wage statements in violation of California Labor Code § 226(a).  (Dkt. No. 1-1 ¶¶ 30-75.)  Additionally, Plaintiff alleged that Defendant's labor code violations constitute an unfair business practice in violation of California Business & Professions Code § 17200 *et seq*.  (*Id.* ¶¶ 76-94.)

On May 2, 2025, Defendant filed its Notice of Removal ("Notice") and removed the case to federal court. (Dkt. No. 1.) The Notice includes the following records: (1) the Complaint (Ex. A, Dkt. No. 1-1); (2) the Summons and other papers Plaintiff served on Defendant (Ex. B, Dkt. No. 1-2); (3) Defendant's Answer (Ex. C, Dkt. No. 1-3); (4) the Declaration of Samantha Landefeld in support of the Notice ("Landefeld Decl.," Ex. D, Dkt. No. 1-4); and (5) the Declaration of Ann McClintic in support of the Notice ("McClinton Decl.," Ex. E, Dkt. No. 1-5).

On May 22, 2025, this matter was assigned to the Honorable Karen L. Stevenson following the parties' consent to proceed before a United States Magistrate Judge. (Dkt. No. 7.) On July 16, 2025, the Court held a Scheduling Conference with the parties during which the Court ordered Plaintiff to file an amended complaint by July 29, 2025 and set the briefing schedules for the anticipated Motion to Remand and Motion to Dismiss. (Dkt. No. 14.) Plaintiff subsequently filed the First Amended Complaint on July 29, 2025 ("FAC," Dkt. No. 16) and the operative Second Amended Complaint on September 16, 2025 ("SAC," Dkt. No. 21).

On August 28, 2025, Plaintiff filed the Motion to Remand. (Dkt. No. 19.) Defendant filed an Opposition on September 25, 2025 (Dkt. No. 24), and Plaintiff's Reply followed on October 10, 2025 (Dkt. No. 27). Defendant subsequently filed its Motion to Dismiss on September 30, 2025. (Dkt. No. 25.) On October 14, 2025, the Court vacated the hearings for both motions and took the motions under submission for decision without oral argument. (Dkt. No. 29) The Court will first address Plaintiff's Motion to Remand.

**LEGAL STANDARD**

Generally, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district

court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).  Under the Class Action Fairness Act ("CAFA"), federal courts have original jurisdiction over civil class actions where: (1) the aggregate number of members of all proposed plaintiff classes is more than 100; (2) any member of the class is a citizen of a State different from any defendant; and (3) the amount in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs.  28 U.S.C. § 1332(d).

In seeking removal under CAFA, the defendant bears the burden of establishing federal jurisdiction.  *See Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).  To satisfy this burden, the defendant need only include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" in its notice of removal.  *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014).  But when a defendant's allegations are challenged in a motion to remand, the defendant must show by a preponderance of the evidence that the amount in controversy exceeds CAFA's $5 million threshold.  *Ibarra*, 775 F.3d at 1197.

While defendants "cannot establish removal jurisdiction by mere speculation and conjecture," removing defendants are permitted to rely on "a chain of reasoning that includes assumptions."  *Id.*; *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019).  However, "[s]uch 'assumptions cannot be pulled from thin air but need some reasonable ground underlying them.'"  *Arias*, 936 F.3d at 925 (quoting *Ibarra*, 775 F.3d at 1199).  "An assumption may be reasonable if it is founded on the allegations of the complaint."  *Id.*  A defendant "need not make the plaintiff's case for it or prove the amount in controversy beyond a legal certainty."  *Harris*, 980 F.3d at 701 (citing *Dart Cherokee*, 574 U.S. at 88-89).

Notably, the amount in controversy is assessed at the time of removal, meaning courts consider damages that are claimed at the time the case is removed by the defendant.  *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018).  "Likewise, when the amount in

4

controversy is satisfied at removal, any subsequent amendment to the complaint or partial dismissal that decreases the amount in controversy below the jurisdictional threshold does not oust the federal court of jurisdiction." *Id.* (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292-93 (1938)).

**DISCUSSION**

Plaintiff does not challenge two of the jurisdictional requirements under CAFA: that the number of members of all proposed plaintiff classes in the aggregate is more than 100 and that any member of a class of plaintiffs is a citizen of a State different from any defendant. 28 U.S.C. § 1332(d). Therefore, the Court focuses its analysis on whether the $5 million threshold for the amount in controversy is met.

Plaintiff advances two arguments for why "Defendant fails to demonstrate by a preponderance of the evidence that the amount in controversy required under CAFA is satisfied": (1) "Defendant relies exclusively on the declaration of its outside counsel," which is unauthenticated hearsay and inadmissible; and (2) "the allegations in the Complaint and Defendant's evidence fail to support Defendant's assumed violation rate for Plaintiff's second cause of action" and "Plaintiff's third and fourth causes of action." (Dkt. No. 19 at 6-17.)

I.      **Defendant's Evidence in Support of the Amount in Controversy**

Plaintiff asserts that Defendant relies exclusively on the declaration of its outside counsel, Ann McClintic, to establish the amount in controversy" even though counsel "is not an Evoqua employee and has no personal knowledge of Evoqua's payroll or personnel data." (Dkt. No. 19 at 8.) Plaintiff argues that the McClintic Declaration is unauthenticated and inadmissible hearsay because the declarant "is neither the custodian nor an employee responsible for these records, and her declaration does not lay any foundation." (*Id.*)

5

Along with the complaint, courts consider allegations in the removal petition as well as "evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (quotation omitted); *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 793 (9th Cir. 2018). "Accordingly, in the context of 'assumed violation rates,' there is no 'requirement that [a defendant] prove it actually violated the law at the assumed rate'—a defendant merely needs to provide a reasonable ground for the assumption." *Calderon v. KeHE Distribs.*, No. 5:25-cv-01668-SSS-DTBx, 2025 U.S. Dist. LEXIS 198603, at *3 (C.D. Cal. Oct. 7, 2025) (quoting *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010)).

Having reviewed Defendant's submitted evidence in support of its Notice of Removal, the Court finds that Defendant's evidence is sufficient for the Court to reasonably consider Defendant's alleged amount in controversy and to determine this Court's jurisdiction under CAFA. *See Muniz v. Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515, at *15 (E.D. Cal. Apr. 30, 2007) ("There is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature [] stage of the litigation."); *Haro v. Target Corp.*, No. EDCV 25-0831 JGB (DTBx), 2025 U.S. Dist. LEXIS 130502, at *16 (C.D. Cal. July 9, 2025) ("Regardless, there is no requirement that evidence be in admissible form on a motion to remand, so long as it is reliable and relevant and could be made admissible at trial."). Therefore, at this juncture, Plaintiff's evidentiary objections are OVERRULED.

## II.    Defendant's Assumed Violation Rates

Defendant "calculates the amount in controversy based on only three of the eight causes of action found in the Complaint": (1) overtime wage violations; (2) meal period violations; and (3) rest period violations. (Dkt. No. 1 at 6 n.2.)  The Court addresses each in turn.

**A. Overtime Wage Violations**

In the Complaint, Plaintiff alleges the following as to Defendant's overtime wage violations: "Throughout the statutory period, Defendants maintained a policy and practice of not paying Plaintiff and the Class for all hours worked, including all overtime wages." (Dkt. No. 1-1 ¶ 15.)  Based on these allegations, Defendant assumed a violation rate of one hour per workweek and calculated Plaintiff's overtime claim to equal approximately $1,414,708.74 in controversy ($31.32 average hourly rate x 30,113 workweeks x 1.5 overtime premium).  (*See* Dkt. No. 1 ¶ 22.)

Plaintiff asserts that "Defendant, in its Notice of Removal, assumes that every putative class member worked approximately one hour of unpaid overtime per work week." (Dkt. No. 19 at 10.)  "However, Defendant fails to provide any extrinsic evidence that putative class members worked long enough shifts to be entitled to overtime pay for every work week throughout the class period." (*Id.*)  "Moreover, Defendant fails to account for any sick days, vacation days, and other leave of absence of putative class members during the class period." (*Id.*)  Finally, Plaintiff avers that "[e]ven if Defendant can produce evidence that employees worked long enough shifts to be entitled to overtime, the allegations of the operative complaint do not support that each putative class member was uncompensated for one hour of overtime wages each work week throughout the proposed class period." (*Id.*)

Defendant contends that because the Complaint is "completely silent as to how frequently overtime hours went unpaid," Defendant has "great leeway to decide what constitutes a reasonable assumption for how many unpaid off-the-clock overtime hours the Original Complaint puts in controversy." (Dkt. No. 24 at 17.)  Defendant asserts that it "assumed one hour a week because: (1) all individuals on the Class Member Report were identified as full time employees scheduled to work 40 hours a week; and (2) it falls in line with assumptions courts in this District have endorsed as permissible." (*Id.* (citations omitted).)

7

"Because the Complaint provides little information about the frequency with which Defendant allegedly violated California labor laws, Defendant may reasonably choose to estimate the frequency of violations when calculating the amount in controversy." *Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*, No. ED CV 19-0839-DOC (SPx), 2019 U.S. Dist. LEXIS 227644, at *15 (C.D. Cal. June 21, 2019). Moreover, "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis*, 627 F.3d at 400. "In that sense, it reflects the *maximum* recovery Plaintiff could reasonably recover." *Calderon*, 2025 U.S. Dist. LEXIS 198603, at *7 (emphasis added) (citing *Chavez*, 888 F.3d at 417).

Several courts have found an assumed violation rate of one hour per workweek to be reasonable based on similar allegations of overtime violations. *See, e.g.*, *Williams v. ABM Aviation, Inc.*, No. 2:24-cv-02181-ODW (JDEx), 2024 U.S. Dist. LEXIS 123208, at *10-11 (C.D. Cal. July 12, 2024) (finding the defendant's assumed overtime violation rate of one hour per workweek to be reasonable based on the plaintiff's allegation that the defendant had a policy and practice of unpaid overtime for all class members); *Andrade v. Beacon Sales Acquisition, Inc.*, No. CV 19-06963-CJC(RAOx), 2019 U.S. Dist. LEXIS 171460, at *10-11 (C.D. Cal. Oct. 1, 2019) (finding the defendant's assumed overtime violation rate of two hours per workweek to be reasonable based on the plaintiff's allegation that the defendant failed to pay overtime wages for all hours worked as "a matter of policy and/or practice"); *Feao v. UFP Riverside, LLC*, No. CV 17-3080 PSG (JPRx), 2017 U.S. Dist. LEXIS 101356, at *8 (C.D. Cal. June 29, 2017) (finding the defendant's assumed overtime violation rate of one hour per workweek to be reasonable based on the plaintiff's allegation that the defendant failed to pay overtime wages "at all material times").

Based on Plaintiff's allegation that Defendant "maintained a policy and practice of not paying Plaintiff and the Class for all hours worked, including all overtime wages," the Court finds that Defendant reasonably assumed an overtime violation rate of one hour per workweek.

(Dkt. No. 1-1 ¶ 15.)  Thus, for the purpose of determining this Court's jurisdiction, the Court accepts Defendant's calculation of $1,414,708.74 as the amount in controversy for Plaintiff's overtime wage violation claim.

**B. Meal Period Violations**

In the Complaint, Plaintiff alleges the following as to Defendant's meal period violations:

> Defendants *sometimes, but not always*, required Plaintiff and the Class to work in excess of five consecutive hours a day without providing 30-minute, continuous and uninterrupted, duty-free meal period for every five hours of work, or without compensating Plaintiff and the Class for meal periods that were not provided by the end of the fifth hour of work or tenth hour of work.

(Dkt. No. 1-1 ¶ 16 (emphasis added).)  Based on these allegations, Defendant assumed a 60% violation rate (three meal period violations per workweek) and calculated the amount in controversy for failure to provide meal breaks to be at least $2,829,417.48 (30,113 workweeks x 5 workdays per workweek x $31.32 meal period premium for missed meal period x 60% violation rate). (Dkt. No. 1 ¶ 20.)

Plaintiff asserts that Defendant's "proposed violation rate is arbitrary, and Defendant fails to support its violation rate with any extrinsic evidence." (Dkt. No. 19 at 16.)  Plaintiff argues that Defendant "failed to provide any evidence to support its assumption that all putative class members worked the requisite number of hours that would have entitled them to meal or rest breaks" and "provides no evidence that every putative class member worked throughout the class period with no leaves of absence." (*Id.* at 16.)  Generally, Plaintiff avers that "[w]hen a complaint says employees 'sometimes, but not always' suffered meal and rest break

violations, that language cannot reasonably be stretched to support an assumed violation rate like 60% for meal period or 30% for rest breaks." (*Id.* at 17.)

Defendant contends the allegation "that putative class members were 'sometimes, but not always' subject to meal period violations . . . gives Evoqua great leeway to decide what constitutes a reasonable assumption for a violation rate." (Dkt. No. 24 at 12.) Defendant further asserts that it assumed a "60% violation rate because: (1) it falls squarely within the Complaint's 'sometimes, but not always' qualifier; (2) all putative members identified on the Class Member Report were identified as full time 40 hour a week employees; and (3) it mirrors the violation rate used by a court in this District when that same phrase was used . . . ." (*Id.* (citations omitted).)

As noted, Defendant assumes a 60% violation rate, or three missed meal breaks per workweek. Defendant largely bases this assumption on the court's acceptance of a 60% assumed meal period violation rate in *Powell v. USI Insurance Services, LLC.* No. 2:23-cv-04129-ODW (BFMx), 2023 U.S. Dist. LEXIS 171842, at *10 (C.D. Cal. Sep. 25, 2023).

In *Powell*, the plaintiff alleged that the defendants "sometimes, but not always" committed meal period violations. *Id.* The plaintiff also alleged that the defendants "maintained a policy and practice" of not permitting the plaintiff and putative class members to leave the premises during meal periods. *Id.* (citations omitted). Considering these allegations, the court found that a 60% violation rate for the plaintiff's meal period claim was proper. *Id.* at *10-11 (citing *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018)).

Here, there is no such allegation that Defendant had a policy and practice of meal period violations. Rather, Plaintiff only alleges that Defendant "sometimes, but not always" committed meal break violations. Therefore, *Powell* does not support a 60% violation rate

based solely on the "sometimes, but not always" allegation. *See id.*

Upon review of Ninth Circuit case law, the Court finds that a 20% violation rate, or one meal period violation per workweek, is more appropriate given Plaintiff's "sometimes, but not always" allegation. *See, e.g.*, *Siegel v. Therapymatch, Inc.*, No. 25-cv-07774-MMC, 2025 U.S. Dist. LEXIS 251940, at *6 (N.D. Cal. Dec. 4, 2025) (finding a 20% violation rate to be reasonable based on allegations that the defendant "sometimes, but not always" failed to provide meal and rest periods); *McKeehan v. JetSuiteX, Inc.*, No. 2:22-cv-06955-JLS-SK, 2023 U.S. Dist. LEXIS 8190, at *6-7 (C.D. Cal. Jan. 17, 2023) (finding that "generalized allegations in the Complaint do not support an assumption of a violation rate of 60 percent"); *Luna v. Pronto Cal. Gen. Agency, LLC*, No. 2:20-cv-05223-RGK-KS, 2020 U.S. Dist. LEXIS 151171, at *9 (C.D. Cal. Aug. 19, 2020) (rejecting the defendant's proposed 40% violation rate in the Notice of Removal but finding the defendant's assumed 20% violation rate in the opposition to the motion to remand to be reasonable given the plaintiff's allegation of the defendant's "occasional failure" to provide meal breaks). Thus, assuming a 20% violation rate, the estimated amount in controversy for Plaintiff's meal period claim is reduced to $943,139.19 (30,113 workweeks x 5 workdays per workweek x $31.32 meal period premium for missed meal period x 20% violation rate).

## C. Rest Period Violations

Finally, as to Defendant's rest period violations, the Complaint alleges:

Defendants *sometimes, but not always*, required Plaintiff and the Class to work in excess of four consecutive hours a day without Defendants authorizing and permitting them to take a 10-minute, continuous and uninterrupted, rest period for every four hours of work (or major fraction of four hours), or without

11

compensating Plaintiff and the Class for rest periods that were not authorized or permitted.

(Dkt. No. 1-1 ¶ 17 (emphasis added).)   Based on these allegations, Defendant assumed a violation rate of 30% (one rest period violation per workweek) and calculated the amount in controversy to be approximately $1,414,708.74 (30,113 workweeks x 5 workdays per workweek x $31.32 rest period premium for missed meal period x 30% violation rate).  (Dkt. No. 1 ¶ 21.)   In challenging Defendant's calculation as to the rest period claim, Plaintiff advances the same arguments as he does for Defendant's meal break calculations.  (Dkt. No. 19 at 16-17.)

The Court finds that Defendant's 30% assumed violation rate is reasonable given Plaintiff's allegation that Defendant "sometimes, but not always" required Plaintiff and the putative class members to work without the required rest breaks.  *Sauls v. Computershare Inc.*, No. 2:24-cv-03164-DAD-AC, 2025 U.S. Dist. LEXIS 194886, at *17 (E.D. Cal. Sep. 30, 2025) (reducing the defendant's assumed violation rate from 60% to 30% in light of the plaintiff's allegation that the defendant "sometimes, but not always" required the plaintiff and class members to work without adequate rest breaks); *Bryant*, 284 F. Supp. 3d at 1151 (finding the defendant's assumed 30% rest violation rate to be reasonable because "the Complaint offered no guidance as to the frequency of the alleged violations").  Accordingly, for the purpose of deciding this Motion, the Court accepts Defendant's calculation of $1,414,708.74 as the amount in controversy for Plaintiff's rest break claim.

## D.  Total Amount in Controversy

Having reduced Defendant's assumed meal break violation rate from 60% to 20%, the Court finds that the revised amount in controversy for Plaintiff's overtime, meal break, and rest period claims equals $3,772,556.67, which is short of the $5 million jurisdictional requirement.

Defendant contends that it has still satisfied its burden of establishing that the amount in controversy satisfies the jurisdictional threshold because Defendant's "calculation does not even include the amount in controversy associated with Plaintiffs' other claims or even their request attorney's fees, which only further serves to drive the conclusion that the amount in controversy more than likely exceeds $5 million." (Dkt. No. 24 at 14.)  But while it is possible that Defendant could have satisfied the $5 million threshold had it made a showing as to the potential damages resulting from Plaintiff's other claims or fees, Defendant has not done so here, and the Court may not carry Defendant's burden.  *Momo Nguyen v. SMTC Mfg. Corp.*, No. 24-cv-07394-JST, 2025 U.S. Dist. LEXIS 152588, at *19 (N.D. Cal. Aug. 6, 2025); *Brown v. Janus of Santa Cruz*, No. 21-cv-00094-BLF, 2021 U.S. Dist. LEXIS 147197, at *21 (N.D. Cal. Aug. 5, 2021) (concluding that the defendant failed to meet its burden because the defendant "has not presented any argument calculating the amount placed in controversy by the remaining claims or evidence in support thereof").  Therefore, the Court concludes that Defendant has not satisfied its burden of proving by a preponderance of the evidence that the amount in controversy for Plaintiff's claims meets the $5 million threshold.  *See Ibarra*, 775 F.3d at 1197; *Dart Cherokee*, 574 U.S. at 89.

## CONCLUSION

Based on the reasoning above, Plaintiff's Motion to Remand is **GRANTED**, and this action is hereby **REMANDED** to the Superior Court of California, County of Los Angeles. Accordingly, Defendant's Motion to Dismiss is **DENIED AS MOOT**.

DATE: January 26, 2026

HON. KAREN L. STEVENSON
CHIEF U.S. MAGISTRATE JUDGE